PEOPLE *v.* HERNÁNDEZ ET AL.

APPEAL from the District Court of Aguadilla.

No. 110.—Decided March 24, 1908.

EVIDENCE—CONFESSION OF ACCUSED.—Where the accused makes a confession to other persons of the crime with which he is charged, such confession may be used as evidence against him if it is freely and voluntarily made without coercion or the use of influence or promises of any character, in the hope of obtaining a lighter punishment or some other benefit to be derived therefrom.

INFORMATION—PRINCIPAL—ACCESSORY—VERDICT.—A defendant cannot be convicted as an accessory to the commission of a crime under an information filed against him charging him as principal because the punishment for an accessory is entirely different from that for a principal and he must be charged by a clear and definite allegation with the facts constituting complicity, and such facts cannot be the same or similar to those with which a principal would be charged.

ID.—In the case at bar the jury found a verdict declaring one of the defendants guilty of murder in the second degree and the other guilty as an accessory to that crime. *Held:* That the information against both defendants having charged murder in the first degree, the verdict was null and void with respect to the defendant found guilty as an accessory and that such nullity does not affect the conviction of the other defendant of the crime of murder in the second degree under the same verdict.

The facts are stated in the opinion.

*Mr. José de Guzmán Benítez* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.

Under date of March 25, 1907, the *fiscal* of the District Court of Aguadilla filed an information against Francisco Hernández and Galo Ruiz for the crime of murder in the first degree, committed as follows:

"The said Francisco Hernández and Galo Ruiz, on the night of February 1-2 of the current year 1907, in *barrio* 'La Torre,' municipality of Lares, which forms part of the judicial district of Aguadilla, P. R., after having come to a mutual understanding, wilfully and unlawfully, with deliberation and malice aforethought, killed Pedro A. Canals, attacking him in the dwelling house on his estate, and employing unknown means, instruments or arms, with which they produced on the body of Pedro A. Canals a number of fatal wounds; and, after committing the deed, they set fire to the house for the purpose of concealing their crime and destroying the traces thereof."

With this information as basis, a trial by jury was held, which jury returned a verdict on April 18 finding the defendant, Francisco Hernández, guilty of the crime of murder in the second degree, and Galo Ruiz of being an accessory thereto.

Counsel for Galo Ruiz made a motion to the court on the said 18th of April to reject said verdict on the ground that it did not conform to the law, because Galo Ruiz having been charged with murder in the first degree, he could not be found guilty of complicity therein without an information charging him with being an accessory thereto.

The court denied the foregoing motion, and on the 26th of said month pronounced judgment in accordance with the verdict, sentencing Francisco Hernández to life imprisonment,

and Galo Ruiz to imprisonment in the penitentiary for four years, with the costs against both defendants, respectively.

From this judgment both counsel for Francisco Hernández and counsel for Galo Ruiz appealed to this Supreme Court, the consolidation of both appeals having been ordered, for decision in due time.

Counsel for Francisco Hernández alleged the following exceptions taken at the trial as the grounds of his appeal, which exceptions we will now set forth and duly examine later:

"1. At the time of the selection of the jury, upon the appearance of Antonio Cajigas to form part thereof, and his being examined by the judge of the court for the purpose of ascertaining his legal qualifications to sit on the jury, said judge addressed the following words to him: 'Mr. Cajigas, this is a cause prosecuted by The People of Porto Rico against those two individuals seated over there, because one night they entered the house of a resident of Lares, named Pedro A. Canals and there wilfully, deliberately and with premeditation killed him, and afterwards set fire to the house to ᵇ᠂ their crime. This act is punishable by the penalty of death, if the *fiscal* proves its commission. Do you come here prepared to do justice or not?' To this question Cajigas made an affirmative answer. Counsel for Francisco Hernández having objected to the statement made by the judge to Cajigas, he protested against the same, and took an exception, Cajigas, however, being accepted as a member of the jury.

"2. Dr. Francisco Sein, a physician and surgeon of Lares, was called to testify as a witness for the prosecution, and after havinig answered the questions of the *fiscal* and been cross-examined by the counsel for Hernández with regard to the result of the examination of the remains found and the possible causes of the death of the person to whom said remains belonged, which remains, considering the age and stature of Canals, whom he had often attended professionally, might be his, counsel for Hernández asked the witness the following

question: 'Can you say whether the presumed murdered person was in the habit of drinking liquor?' The *fiscal* objected to the question as irrelevant, as it had no bearing upon the question which he had asked the witness, and the court having sustained the objection, the defense noted an exception.

"3. When José Vélez González, a witness for the prosecution, gave his testimony, he was questioned by the *fiscal* as to whether he had heard any statement by Francisco Hernández, in the municipal court of Lares, the morning of February 2, and upon his answering that he had not, the *fiscal* put his question in the following form: 'Did you not hear some statement when you were going to testify?' Counsel for Hernández objected to this question, and the objection having been overruled, he took an exception. The witness answered it in the affirmative, and upon being questioned by the *fiscal* to tell what Francisco Hernández had said to him at the time, he replied that he had said to the witness and a number of others, not to get crazy talking; that a few words were sufficient for the statement they had to make.

"4. Juan Olavarría, witness for the prosecution, testified among other matters, that Francisco Hernández had asked him to exchange their *machetes* because that of the witness would suit him better for his work, and one night—date not stated—after he had retired, said Hernández went to the house of the witness to get his *machete*, without saying what he wanted it for. Upon the conclusion of the direct examination of the *fiscal*, counsel for the defendant put the following question to the witness: 'When you awoke upon being called by Paco Hernández, what reason did he give you for asking for the *machete?*' The *fiscal* objected to the question as having been asked before, first by himself, an later by the defense. The court sustained the objection of the *fiscal*, holding that counsel cannot put questions concerning the defendant, whom he may use as a witness, and counsel took exception.

"5. The witness Josefa Herrera having been unable to testify due to her being insane, according to the statement made by the physician, Dr. Sein, and to whose insanity the parties agreed without the necessity of additional· evidence, the *fiscal,* availing himself of the provisions of section 11 of the Code of Criminal Procedure, asked leave of the court to read her deposition given on February 6; 1907, before the *fiscal* and municipal judge, Mr. Bryan, at the preliminary investigation of the cause; and notwithstanding the objection of counsel for Francisco Hernández, the court ordered said deposition to be read, which was done, the defense noting an exception.

"6. While witness Juan Esteban was giving his testimony the following question was put to him by counsel for Francisco Hernández: 'Does the witness know anything of the orders which Pedro A. Canals gave the overseer, Francisco Hernández, with respect to Juana Nieves?' The *fiscal* objected to this question as a leading one, and the counsel for the defense having explained that his purpose was to prove the malicious intent and bad faith of witness Juana. Nieves, the court sustained the objection of the *fiscal,* on the ground that the orders were given Paco Hernández and that the defense could produce the defendant as a witness, whereupon the defense took an exception."

Counsel for Francisco Hernández alleges furthermore as the final ground for the appeal that, considering the terms in which the information is drawn, the jury committed an error, which was later ratified by the judgment of the court, in finding Francisco Hernández guilty of the crime of murder in the second degree, and Galo Ruiz an accessory to said crime, because if it did not consider that the common intention and participation of both defendants in the criminal.act had been proved, it implicitly held that the evidence did not prove the commission of the crime charged against them, nor any other crime necessarily included therein, and, therefore, it was

not consistent with said evidence in finding Francisco Hernández guilty of murder, as a principal, and acquitting Galo Ruiz of being a principal and convicting him of being an accomplice.

Counsel for the appellant Galo Ruiz alleges as ground of his appeal that the verdict of the jury and subsequent judgment against him are void, because he had been convicted of being an accomplice, when he was charged with being a principal, thus manifestly violating the provisions of sections 35, 36 and 201 of the Penal Code, and 286 of the Code of Criminal Procedure, as also the doctrine established by this Supreme Court in the case of *The People of Porto Rico* v. *Antonio Paz,* 12 P. R. Rep., p. 98, and in *Ex parte José de Thomas,* 12 P. R. Rep., p. 350, which violation of law had been alleged by counsel for Galo Ruiz in the lower court upon making a motion that the verdict of the jury be set aside as to said defendant on the ground that it did not conform to the law.

With regard to the first ground alleged in support of the appeal taken by Francisco Hernández, it lacks basis because, in addressing juror Antonio Cajigas as he did, the judge of Aguadilla did not intimate to said juror that the acts charged against the defendant were actually true, but he merely confined himself to informing him of the charge brought against them by The People of Porto Rico, employing, in so doing, the very words used in the information and expressly stating that the act is punishable by death, provided the *fiscal* proved the commission thereof.

The judge did not affirm, as alleged by counsel for the appellant, Hernández, that the defendants had committed the act charged against them deliberately and with premeditation, nor did he make any remarks to the jurors present which could induce them to prejudge the matter and much less convince them of the guilt of the defendants, the jurors remaining, therefore, after these remarks at perfect liberty to weigh

the evidence in accordance with the dictates of an honest conscience and find a just and impartial verdict as a result thereof.

Neither the sixth amendment to the Constitution of the United States nor section two of the Code of Criminal Procedure, which are improperly invoked, have been violated as alleged through an erroneous appreciation of the facts.

The second ground of the appeal is likewise untenable because we see no reason whatsoever to consider as relevant the question put by counsel for Hernández to the witness Dr. Francisco Sein, as to whether the deceased was in the habit of taking liquor. The testimony of said physician produced by the *fiscal* tended to clear up the circumstances attending the death of Pedro Canals, and the question referred to did not contribute to such elucidation, although a question as to whether alcoholic diathesis could have caused his death, or whether the examination of the remains of Canals could lead to such couclusion, must have contributed thereto. As the record does not contain a statement of facts in the form prescribed by law, we do not know what reasons counsel for the defendant, Hernández, may have had for putting said question, the relevancy or irrelevancy of which could be ascertained only upon an examination of the facts brought to the trial in support of the defense, the mere insertion of the testimony of Dr. Sein in the bill of exceptions not being sufficient therefor, because it might very well have happened that said question with reference to all the evidence and allegations introduced at the trial, with which this court is not acquainted, was not only irrelevant, but even impertinent and useless.

The exception taken by the counsel for Francisco Hernández in connection with the question of the *fiscal* to José Vélez González, a witness for the prosecution, as to whether he had heard any statement made by Hernández when the witness was about to testify, cannot be sustained, because if we

consider the legal scope of the answer which the witness made to the question, namely: whether the defendant said to the witness and others "not to get crazy talking; that a few words were sufficient for the statement they had to make," it appears to us that this answer had no influence on the result of the trial; but even if it had, in view of the other evidence heard, with which we are not acquainted, because no statement of facts has been presented in this court, we are of the opinion, as we have already held, in the case of *The People of Porto Rico* v. *Francisco Rivera, alias Panchito,* 7 P. R. Rep., p. 325, "that the confessions of a defendant in regard to the crime of which he is accused can be introduced against him, provided they are freely and voluntarily made, without being extorted from him by undue influence, or by promises held out to him by some one in authority, or by the hope of a lighter punishment, or some benefit to be derived by making them."

The record does not contain any evidence that the statements made by the defendant to witness José Vélez González contain any defect which could invalidate them.

A manifest inconsistency is observed between the exception taken by counsel for the defendant to the question put by the *fiscal* to José Vélez, a witness for the prosecution, with reference to statements made to him by Francisco Hernández and the other exception taken by the said counsel for the defense to the exclusion of the question put by him to witness Juan Olavarría as to the reason Francisco Hernández gave for asking for his *machete,* because if the question put to the witness José Vélez González was inadmissible, on account of its reference to statements made by the defendant, the question put by counsel for the defense to witness Olavarría had likewise to be so considered and, therefore, following his own reasoning he could not put the question, the propriety whereof he sustains without incurring a flagrant inconsistency. But aside from this inconsistent conduct of counsel, the question was redundant, because it had already been answered by wit-

ness Olavarría, as shown by the bill of exceptions, and, therefore, it was properly excluded.

The record does not contain the elements necessary to enable us to judge of the  propriety or impropriety of the reading of the deposition given by Josefa Herrera, the insane woman, at the preliminary hearing in the case.  We do not know whether Josefa Herrera gave her testimony in the absence of the defendant or in his presence, and we cannot affirm, therefore, that by reading it, section 11 of the Code of Criminal Procedure was vio'ated, as it actually was in the case of *The People of Porto Rico* v. *Simón Reyes,* 10 P. R. Rep., p. 240, cited by the defense.

With respect to the exception. taken by counsel for Francisco Hernández because he had not been permitted to question witness Juan Esteban as to orders given by the decedent, Pedro A. Canals, to the overseer, Francisco Hernández, with regard to Juana. Nieves, by which question he alleges that he intended to prove the  malicious intent and bad faith of said witness, as the record does not contain the testimony of Juana Nieves, we do not know whether the question ruled out was of importance and had any bearing on the result of the trial.

With regard to the ground for the appeal taken by counsel for Galo Ruiz, the *fiscal* believes it to lie and acquiesces therein, praying the court to hold that the verdict of the jury as to Galo Ruiz is contrary to law, and, consequently, that the judgment appealed from be reversed and a new trial ordered.

We agree with the *fiscal* and hold as he does that there is no doubt that complicity and the consummated crime are two entirely different things, and that to convict a person as an accessory to a crime it is necessary that an information, properly prepared, be first filed, in which the acts constituting such complicity are clearly and explicitly set forth, and such facts can never be the same or similar to the acts which constitute the consummated crime.

This doctrine has already been established by this Supreme Court, supported by lengthy reasoning and legal cita-

tions, in the cases of *The People of Porto Rico* v. *Antonio Paz,* 12 P. R. Rep., p. 98, and *Ex parte José de Thomas,* 12 P. R. Rep., p. 350.

We refer to those cases for the sake of brevity.

The question now is, does the annulment of the verdict and judgment rendered with respect to Galo Ruiz entail the annulment of said verdict and judgment as regards Francisco Hernández? In answering this question let us examine the last ground of the appeal taken by counsel for Francisco Hernández.

We see no legal reason whatsoever which prevents us from holding that the verdict and judgment as rendered are valid with respect to Hernández, and void with respect to Galo Ruiz. The legal reasons for the nullity of the verdict and judgment as to Ruiz do not affect Hernández. The jury found Hernández guilty of the crime of murder in the second degree, holding that he had performed all the acts which go to make up such crime according to the showing of the evidence, and in view of the same evidence, held that Galo Ruiz had not committed such acts. The guilt of Hernández is absolutely independent of that of Galo Ruiz; one may be guilty and the other innocent; one could be convicted and the other acquitted, according to section 92 of the Code of Criminal Procedure. What does occur is that it was not shown in the opinion of the jury that Galo Ruiz conspired with Francisco Hernández and in union with him committed the acts described in the information; the fact is that Hernández consummated the crime and Ruiz did not. The verdict and judgment are congruous as to Hernández, notwithstanding the fact that they are void as to Ruiz; and with regard to the latter, they should be set aside as prayed for and a new trial ordered.

This new trial of Galo Ruiz may be held upon regular information with all legal formalilties, the judgment rendered against Francisco Hernández not being an obstacle thereto, because section 94 of the Code of Criminal Procedure clearly

provides that an accessory to the commission of a felony may be prosecuted, tried and punished, though the principal may be neither prosecuted nor tried or though the principal may have been tried or acquitted. The judgment should be affirmed as to Francisco Hernández, and reversed, and a new trial ordered, as to Galo Ruiz.

Such should be the final decision upon both appeals.

*Accordingly decided.*

Chief Justice Quiñones and Justices MacLeary and Wolf concurred.

Mr. Justice Figueras did not take part in the decision in this case.